[This opinion has been published in *Ohio Official Reports* at 84 Ohio St.3d 155.]

GAMMARINO, TRUSTEE, APPELLANT, *v.* HAMILTON COUNTY BOARD OF
REVISION ET AL., APPELLEES.

[Cite as *Gammarino v. Hamilton Cty. Bd. of Revision*, 1998-Ohio-715.]

*Taxation–Real property valuation–Owner of property seeking reduction in
valuation listed as "trustee" of property when no trust exists–Owner
entitled to represent himself before the board of revision and the Board of
Tax Appeals.*

(No. 98-33—Submitted July 30, 1998—Decided December 16, 1998.)

APPEAL from the Board of Tax Appeals, No. 97-P-544.

———————————

{¶ 1} On January 31, 1997, a real property valuation complaint was filed
with the Hamilton County Board of Revision ("BOR"), seeking a reduction in the
valuation of real property located at 4110 Bell Street in Cincinnati. The complaint
listed the owner as "Al Gammarino, TR" and was signed by "Al Gammarino, TR"
("Gammarino"). The property was deeded to Al Gammarino, Trustee, by the
Hamilton County Sheriff in August 1996. The owners prior to the tax lien
foreclosure sale were Philip and Margaret Blevins.

{¶ 2} On or about April 4, 1997 the BOR sent Al Gammarino and Philip
and Margaret Blevins notices of a hearing to be held on April 17, 1997. The notices
stated that the hearing would be restricted to the issue of standing only. The
certified mail receipt for the Blevinses' notice was signed for by Margaret Blevins.
The certified mail receipt addressed to Al Gammarino shows no signature, and the
envelope is marked "unclaimed" with a handwritten notation stating "Vac. Hold,
Left Notice 4-5-97."

{¶ 3} At the hearing on April 17, 1997, neither Gammarino nor the
Blevinses were in attendance. The BOR was informed by the auditor's office that

although Gammarino filed the complaint, the auditor's records showed the property as belonging to Philip (and Margaret) Blevins. The BOR voted to dismiss the complaint for failure to prosecute.

{¶ 4} Gammarino appealed the BOR's dismissal to the Board of Tax Appeals ("BTA"). The notice of appeal to the BTA was filed in the name of "Al Gammarino, Trustee." The BTA issued an order to Gammarino to show cause within twenty-one days why the BOR's order should not be affirmed.

{¶ 5} In his response and affidavit to the show cause order, which he filed twelve days after the deadline set by the BTA, Gammarino stated that when he left on vacation on or about April 3, 1997, he requested the post office to hold his mail. He further stated that when he returned from vacation and retrieved his mail, it contained a notice that a certified letter from the BOR was being held. When he tried to pick up the certified letter, on or about April 21, 1997, he was informed that it had been returned to the BOR. He says that he immediately contacted the BOR and was informed that he had missed the April 17, 1997 hearing. When he asked that the hearing be rescheduled, his request was denied.

{¶ 6} The BTA affirmed the BOR's dismissal. The BTA's decision was not based upon a failure to prosecute, either at the BOR or BTA, but, instead, the BTA determined that the original complaint filed by Gammarino was insufficient to confer jurisdiction upon the BOR. The BTA stated that there was nothing in the record to establish that Gammarino was "an attorney licensed to act in a representative capacity on behalf of a trust."

{¶ 7} Gammarino filed a motion for reconsideration with the BTA and attached another affidavit in which he explained that there was no trust. In addition, Gammarino stated in his affidavit that he had not recorded the deed he had received from the sheriff for the Blevinses' property, and that he was the owner and not a trustee for any trust. The BTA denied Gammarino's motion for reconsideration.

{¶ 8} This cause is now before this court upon an appeal as of right.

_____

*Al Gammarino*, *pro se*, appellant.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Thomas J. Scheve,* Assistant Prosecuting Attorney, for appellees.

_____

**Per Curiam.**

{¶ 9} Gammarino raises two contentions in this appeal. His first contention is that "Al Gammarino, Trustee" is entitled to represent himself before the Board of Tax Appeals. His second contention is that the BTA speculated that there is a trust, and since there is no trust he should be able to appear before the BOR and the BTA representing himself. We agree.

{¶ 10} In its October 24, 1997 show cause order, the BTA ordered Gammarino to file a response as to why the decision of the BOR should not be affirmed upon the authority of *LCL Income Properties v. Rhodes* (1995), 71 Ohio St.3d 652, 646 N.E.2d 1108 (affirming the board of revision's dismissal of a valuation complaint for failure to prosecute); *Dorcas W. Burns Trust v. Ashtabula Cty. Bd. of Revision* (Sept. 12, 1997), BTA No. 97-K-710, unreported (remand with instructions to dismiss valuation complaint filed by nonattorney trustee on behalf of trust); and *Al Gammarino, Trustee, v. Hamilton Cty. Bd. of Revision* (Oct. 17, 1997), BTA No. 96-B-1796, unreported (dismissal of valuation complaint for failure to prosecute with statement that filing on behalf of trust by nonattorney trustee would warrant dismissal).

{¶ 11} These cases raised two issues: first, the failure to prosecute and, second, the unauthorized practice of law by a trustee filing a real estate valuation complaint on behalf of the trust. In his belated response to the BTA's show cause order, Gammarino responded only concerning the issue of failure to prosecute.

{¶ 12} In its decision, the BTA, however, found that it did not need to address the failure to prosecute issue; instead, it addressed only whether

Gammarino was a licensed attorney authorized to act in a representative capacity on behalf of a trust. After the BTA issued its decision, Gammarino filed a motion for reconsideration, with an attached affidavit in which he stated that he owned the property, and that there was no trust.

{¶ 13} Gammarino argues that there is no trust and therefore he owns the real estate personally. In support of his argument, Gammarino cites R.C. 5301.03, which states:

" 'Trustees,' 'as trustee,' or 'agent,' or words of similar import, following the name of the grantee in any deed of conveyance or mortgage of land executed and recorded, without other language showing a trust or expressly limiting the grantee's or mortgagee's powers, or for whose benefit the same is made, or other recorded instrument showing such trust and its terms, do not give notice to or put upon inquiry any person dealing with said land that a trust or agency exists, or that there are beneficiaries of said conveyance or mortgage other than the grantee and those persons disclosed by the record, or that there are any limitations on the power of the grantee to convey or mortgage said land, or to assign or release any mortgage held by such grantee. As to all subsequent bona fide purchasers, mortgagees, lessees, and assignees for value, a conveyance, mortgage, assignment, or release of mortgage by such grantee, whether or not his name is followed by 'trustee,' 'as trustee,' 'agent,' or words of similar import, conveys a title or lien free from the claims of any undisclosed beneficiaries, and free from any obligation on the part of any purchaser, mortgagee, lessee, or assignee to see to the application of any purchase money."

{¶ 14} We have previously stated that R.C. 5301.03 is a notice statute. *Marital Trust Under Will of Casto v. Lungaro* (1986), 22 Ohio St.3d 298, 300, 22 OBR 467, 468, 490 N.E.2d 599, 600. Thus the mere designation of a grantee as "trustee" in a deed, without other language showing that a trust exists, does not make the grantee a trustee of a trust.

**{¶ 15}** One of the conditions set forth in R.C. 5301.03 is that the deed be recorded. However, in his affidavit Gammarino stated that he has not recorded his deed, and there is no evidence to the contrary. Whether the deed is recorded or unrecorded is not determinative of our decision in this matter. The concept set forth in R.C. 5301.03 is not new. This court has ruled previously in *Hill v. Irons* (1953), 160 Ohio St. 21, 50 O.O. 485, 113 N.E.2d 243, paragraph one of the syllabus, that "[i]n order to engraft a trust upon an absolute deed, the declaration of such trust must be contemporaneous with the deed, and the evidence relied upon must be clear, certain and conclusive and must establish the existence of the trust beyond a reasonable doubt." In the course of our opinion in *Hill*, we stated, "Another well accepted rule of law is that the burden of proving the existence of a trust rests on the person asserting it." *Id.* at 29, 50 O.O. at 488, 113 N.E.2d at 248. In the case of *In re Estate of Hoffman* (1963), 175 Ohio St. 363, 25 O.O.2d 270, 195 N.E.2d 106, the deceased opened saving accounts in his name as trustee for several different people. We held that a trust is not created solely by reason of words in a passbook stating that the depositor is a trustee for another.

**{¶ 16}** In *Hodgson v. Dorsey* (1941), 230 Iowa 730, 298 N.W. 895, the Iowa Supreme Court was presented with the issue of whether a deed given to a grantee as "trustee," without any terms of trust or name of any beneficiary, was sufficient to create a trust. The Iowa Supreme Court considered whether the designation "trustee" is merely *descriptio personae* or whether it indicated an intention to create a trust. Relying on cases from other states, the Iowa court held that the word "trustee" without more did not create a trust, and that the grantee received the property unencumbered by any trust relationship. See Annotation (1942), 137 A.L.R. 460.

**{¶ 17}** Consequently, the designation "Trustee" after Al Gammarino's name in the sheriff's deed did not create a trust or make Al Gammarino a trustee of a trust. There being no trust, the use of the term "Trustee" after Al Gammarino's

name on the deed was surplusage. The result is that the property in question is owned by Al Gammarino personally.

{¶ 18} The situation here is not the same as in *Mahoning Bar Assn. v. Alexander* (1997), 79 Ohio St.3d 1220, 681 N.E.2d 934, because Al Gammarino is not a trustee: he owns the property. Therefore he can file a complaint on his own behalf. *Sharon Village Ltd. v. Licking Cty. Bd. of Revision* (1997), 78 Ohio St.3d 479, 480, 678 N.E.2d 932, 934.

{¶ 19} For all the foregoing reasons the decision of the BTA was unreasonable and unlawful, and it is reversed and the cause remanded.

*Decision reversed*

*and cause remanded.*

DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., and COOK, J., dissent.

---

**COOK, J., dissenting.**

{¶ 20} I differ with the decision of the majority because it reverses the BTA on a substantive argument, one that is irrelevant to this case in light of the procedural default by this taxpayer.

{¶ 21} Gammarino lost at the BTA by defaulting on the issue of his standing to file a valuation complaint. It appeared as though Gammarino was acting in a representative capacity, and that the complaint he filed was jurisdictionally insufficient because Gammarino is not licensed to practice law in Ohio. The BOR and later the BTA both asked Gammarino to verify whether he in fact had standing to file the complaint given this court's recent decision, *Gammarino v. Hamilton Cty. Bd. of Revision* (1997), 80 Ohio St.3d 32, 684 N.E.2d 309, involving this same appellant. Rather than responding to the BTA's show-cause order that he is the true property owner and that R.C. 5301.03 applies, Gammarino instead filed a belated

response to the BTA that did not demonstrate his standing as a nonattorney to file the complaint in this case.

{¶ 22} The determinative question before this court, then, is whether the BTA abused its discretion in refusing to accept Gammarino's tardy clarification of his relationship to this property. Based on the state of the record at the time the BTA rendered its decision, Gammarino's motion for reconsideration neither raised an obvious error nor presented an issue improperly ignored by the BTA. See, *e.g.*, *State ex rel. Huebner v. W. Jefferson Village Council* (1996), 75 Ohio St.3d 381, 383, 662 N.E.2d 339, 341; *Garfield Hts. City School Dist. v. State Bd. of Edn.* (1992), 85 Ohio App.3d 117, 123, 619 N.E.2d 429, 433. Rather, Gammarino produced evidence that could have, and should have, been presented in response to the BTA's show-cause order. Under the circumstances, the BTA's reconsideration decision was neither unreasonable nor unlawful. R.C. 5717.04; *Montpelier Pub. Library Bd. of Trustees v. Williams Cty. Budget Comm.* (1996), 75 Ohio St.3d 520, 521, 664 N.E.2d 897, 898.

{¶ 23} Furthermore, even if timely raised, Gammarino's substantive argument lacks any merit. I agree with the BTA that R.C. 5301.03, a conveyancing statute of limited application, is immaterial to Gammarino's case. The purpose of the statute is to protect purchasers of real property from hidden encumbrances. R.C. 5301.03 permits a purchaser, in the context of a real estate transaction, to assume that the use of the word "trustee" after a grantee's name does not indicate a limitation on the grantee's ability to convey the property unencumbered. See *Bank One of Milford v. Bardes* (1986), 25 Ohio St.3d 296, 297, 25 OBR 346, 347, 496 N.E.2d 475, 476. The statute is inapposite to the issue of standing to file a complaint.

{¶ 24} Based on the foregoing, the BTA's decision should be affirmed.

MOYER, C.J., concurs in the foregoing dissenting opinion.

———————————